AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Jul 19, 2022

OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Texarkana Division

**IN THE MATTER OF THE SEARCH OF:**
FOUR WIRELESS TELEPHONES: (1) APPLE iPHONE, IMEI: 359486322123686; (1) APPLE iPHONE, IMEI: 356425106442550; (1) APPLE iPHONE, IMEI: 357332368645285; & (1) APPLE iPHONE, IMEI: 356599144908606, CURRENTLY IN THE CUSTODY OF HSI TEXARKANA RESIDENT AGENT IN CHARGE OFFICE, 3822 AIRPORT PLAZA, TEXARKANA, MILLER COUNTY, ARKANSAS

No. ___4:22-cm-10___

**Filed Under Seal**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location):*
**See "Attachment A"**

located in the Western District of Arkansas there is now concealed *(identify the person or describe the property to be seized):*
**See "Attachment B." This Court has authority to issue the requested search warrant under Federal Rule of Criminal Procedure 41.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    [ x ] evidence of a crime;
    [ x ] contraband, fruits of crime, or other items illegally possessed;
    [ x ] property designed for use, intended for use, or used in committing a crime;
    [   ] a person to be arrested or a person who is unlawfully restrained.

The search is related to violations, in the Western District of Arkansas, of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of a controlled substance with intent to distribute and distribution of a controlled substance |
| 21 U.S.C. § 843(b) | Unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses |

The application is based on these facts:   (See attached affidavit of SA Chet Sanford, HSI)
[ x ]   Continued on the attached sheet.

[   ]   Delayed notice of __ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

(Appearing by telephone conference call at 415-527-5035)
SA Chet Sanford, Homeland Security Investigations, *Affiant*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035.

Date: 7-19-22

City and state: Hot Springs AR

*Judge's signature*

Hon. Barry A. Bryant, United States Magistrate Judge, W. D. Ark.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** ) | |
| FOUR WIRELESS TELEPHONES: (1) APPLE ) | |
| iPHONE, IMEI: 359486322123686; (1) APPLE ) | |
| iPHONE, IMEI: 356425106442550; (1) APPLE ) | CASE NO. ____4:22-cm-10_____ |
| iPHONE, IMEI: 357332368645285; & (1) ) | |
| APPLE iPHONE, IMEI: 356599144908606 ) | |
| CURRENTLY IN THE CUSTODY OF HSI ) | **FILED UNDER SEAL** |
| TEXARKANA RESIDENT AGENT IN ) | |
| CHARGE OFFICE, 3822 AIRPORT PLAZA ) | |
| TEXARKANA, MILLER COUNTY, ) | |
| ARKANSAS ) | |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Chet Sanford, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with Homeland Security Investigations (HSI) currently

assigned to the Resident Agent in Charge (RAC), Texarkana Office. I have been employed with

HSI since 2015. Prior to my employment with HSI, I was a Border Patrol Agent for four years,

and I was assigned to the HSI Task Force in Eagle Pass, Texas, from 2014 until my employment

began with HSI. Prior to my employment with the United States Border Patrol, I was a Special

Investigator for eleven years conducting federal investigations for the Office of Personnel

Management (OPM) as a contractor.

2.      During my employment as an HSI Special Agent, HSI Taskforce Agent, and as a

Border Patrol Agent, I have participated in narcotics, weapons, bulk cash, and human

smuggling/trafficking investigations which involved the use of Title III Interceptions, undercover

agents, confidential informants, cooperating witnesses, physical surveillance, consensual

recordings, toll record analysis, search warrants, and subject interviews. Through such

investigations and training, I have become familiar with the activities of narcotic and/or alien smugglers; the types and amounts of profits made by criminals; and the methods, language and terms that are used to smuggle aliens, narcotics, weapons, and bulk cash, and the dealings associated with such activities.

3.   I have participated in executions of search warrants and surveillance operations. I have participated in operations that have involved the arrest of individuals suspected of engaging in criminal activities.  In addition, I have training and experience in debriefing defendants, informants, and other persons who have personal knowledge of narcotics, weapons, bulk cash, and human smuggling. I have received special training in the enforcement of laws concerning narcotics in Title 21, United States Code. I am familiar with the ways in which smugglers conduct their business, including, but not limited to, their methods of smuggling and transporting narcotics, weapons, and bulk case, their use of mobile telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.  This Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.   I have participated in criminal and administrative investigations of violations of Federal and State laws, obtained and executed warrants, and have arrested and been a part of the successful prosecution of criminal violators. Throughout these investigations, I have analyzed data extracted from cellular phones and have found evidence pertaining to the crime in question. Based on my training, experience, and my participation in this and other investigations involving smuggling of goods into the United States, I know that individuals who conspire to smuggle and who smuggle goods into the United States, often utilize cellular phones and other similar wireless and wired internet-capable devices to arrange for the shipment and delivery of those goods, and to maintain contact with other conspirators involved in the smuggling organization or with the

individual(s) and/or business(es) that sell such goods. I also know that cellular phones commonly contain a call history, to include made and received calls, call times and details, along with stored telephone numbers, text messages, photographs, videos, and voicemails, Further, I know that similar internet-capable devices can also contain internet search histories and other sources of information that can shed light on their users' locations, travel, contacts, interests and other activities.

### IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5.    The devices to be searched are as follows:

    a.    A black Apple iPhone wireless telephone bearing model number: unknown; serial number: unknown; IMEI: 359486322123686; and an unknown assigned telephone number, which is identified, described and depicted as DEVICE 1 in "Attachment A" to this Affidavit (hereinafter individually "DEVICE 1"), and which is currently in HSI custody in Texarkana, Arkansas, in the Western District of Arkansas.

    b.    A black Apple iPhone wireless telephone bearing model number: unknown; serial number: unknown; IMEI: 356425106442550; and an unknown assigned telephone number, which is identified, described and depicted as DEVICE 2 in "Attachment A" to this Affidavit (hereinafter individually "DEVICE 2"), and which is currently in HSI custody in Texarkana, Arkansas, in the Western District of Arkansas.

    c.    A red Apple iPhone wireless telephone bearing model number: unknown; serial number: unknown; IMEI: 357332368645285; and an unknown assigned telephone number, which is identified, described and depicted as DEVICE 3 in "Attachment A" to this Affidavit (hereinafter individually

"DEVICE 3"), and which is currently in HSI custody in Texarkana, Arkansas, in the Western District of Arkansas.

d.   A red Apple iPhone wireless telephone bearing model number: unknown; serial number: unknown; IMEI: 356599144908606; and an unknown assigned telephone number, which is identified, described and depicted as DEVICE 4 in "Attachment A" to this Affidavit (hereinafter individually "DEVICE 4"), and which is currently in HSI custody in Texarkana, Arkansas, in the Western District of Arkansas.

6.   The applied-for warrant would authorize the forensic examination of DEVICE 1, DEVICE 2, DEVICE 3, and DEVICE 4, (hereinafter collectively the "SUBJECT DEVICES") for the purpose of identifying and seizing electronically stored evidence of distribution of, and possession with intent to distribute, methamphetamine, a Schedule II controlled substance under federal law, and unlawful use of a communications facility in furtherance of such drug trafficking offenses, in violation of Title 21, U.S.C. §§ 841(a)(1) and 843(b), respectively. The electronically stored evidence sought is described more particularly in "Attachment B" to this Affidavit.

## TECHNICAL TERMS

7.   Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   **Wireless telephone**: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      **Digital camera**: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      **Portable media player**: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

## INFORMATION REGARDING THE USE OF WIRELESS TELEPHONES IN DRUG TRAFFICKING AND RELATED FINANCIAL CRIMES

8.      Based upon your affiant's training, experience, and participation in other drug and financial investigations involving wholesale and retail amounts of controlled substances, as well as the knowledge and experience of other agents and police officers with whom your affiant has worked, your affiant knows:

a.      That it is common for drug traffickers (often referred to as dealers or distributors) to maintain records relating to the ordering, transportation, sale and distribution of controlled substances, and to the collection, transfer and expenditure of payments therefor or proceeds thereof.  That the aforementioned records are maintained where the traffickers have ready access to them, including their residences, businesses, vehicles, storage units and/or other locations over which they maintain dominion and control.

b.      That drug traffickers often utilize electronic equipment, such as wireless telephones to generate, transfer, count, record and/or store the information

described in the preceding paragraph. In my experience, it is common for drug traffickers to use two or more wireless telephones for those purposes.

c.       That drug traffickers commonly maintain electronic equipment, such as wireless telephones, which contains the names, telephone numbers, addresses and/or electronic email addresses of others involved in drug trafficking, whether within the same drug trafficking organization or separately;

d.       That drug traffickers often take or cause to be taken photographs and videos of themselves, their associates, their assets and their products. That drug traffickers usually maintain these photographs and videos in their possession, often on wireless telephones, in locations over which they maintain dominion and control;

e.       That drug traffickers often travel, or pay and arrange for others to travel, in furtherance of their drug trafficking activities, including traveling to transport drugs and to transport currency derived from and/or related to the drug trafficking activities. That drug traffickers who travel, or who contract others to travel on their behalf, often communicate with their sources of supply or customers prior to, during and after their travel. Drug Traffickers typically leave records of these communications in various places. Including, but not limited to, their wireless telephones, computers, text messaging devices, telephone answering machines, and handwritten notes. These communication records are commonly found in a trafficker's residence, or other locations over which they maintain dominion or control.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

9.       Based on my knowledge, training, and experience, I know that electronic devices, such as wireless telephones, can and often do store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

10.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is

probable cause to believe that this forensic electronic evidence is on the SUBJECT DEVICES

because:

> a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
>
> b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
>
> c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
>
> d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.
>
> e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.
>
> f.      How the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

11.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant.  The examination of the SUBJECT DEVICES may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

12.      *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

the physical intrusion into any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## PROBABLE CAUSE

13.     On March 10, 2022, Arkansas State Police (ASP) Trooper David Hamilton was stationary in his ASP patrol vehicle in the median of Interstate 30, near mile marker 3, just east of Texarkana, AR. While observing traffic, Trooper Hamilton saw a white SUV following more closely behind a pickup than Trooper Hamilton knew, from his training and experience, was reasonable and prudent in light of the prevailing traffic and highway conditions.[1] Trooper Hamilton pulled out of the median and proceeded to catch up to the vehicles, to obtain the license plates of both vehicles. The pickup made a lane change and maintained its speed, pulling away from the white SUV, which slowed down in such a manner that Trooper Hamilton believed, based on his training and experience, that the driver was attempting to prevent his patrol vehicle from getting behind it. Trooper Hamilton obtained the license plate of the pickup, and then slowed down in an effort to obtain the license plate number of the white SUV. The white SUV continued to slow down as well, which appeared to Trooper Hamilton to be an effort to keep from passing his ASP patrol car. Trooper Hamilton then activated his emergency lights to conduct a traffic stop on the white SUV, near mile marker 8, in Miller County, in the Western District of Arkansas.

14.     Trooper Hamilton approached the passenger side of the vehicle and made contact with the occupants. The driver provided a Texas Identification Card, and was identified as Elmer BREED, date of birth 08/29/1989. While speaking with the driver, Trooper Hamilton noticed sweat building up on BREED's forehead and face, even though the temperature was in the low 30's at the time. Trooper Hamilton could also smell the odor of marijuana coming from the vehicle. Trooper Hamilton had BREED exit the vehicle and proceed back to Trooper Hamilton's

---

[1] Following too closely, as described here, is a violation of Arkansas Code Annotated, Section 27-51-305.

car. Trooper Hamilton began running law enforcement record checks on BREED and discussed the trip BREED was taking. BREED stated he was going to Tennessee for a rap music video and that they were going to stay in an Airbnb. When asked about the odor of marijuana, BREED admitted to smoking marijuana before getting inside the vehicle. Trooper Hamilton then went back to the vehicle and made contact with the passenger, identified as Kimberly CHACHERE. CHACHERE was asked about their trip, and she stated they were taking a vacation for a couple days to Tennessee, and they were just going to get a hotel once they got there. These conflicting stories elevated Trooper Hamilton's suspicion of the purpose of their trip.

15.    Trooper Hamilton then had CHACHERE exit the vehicle so that he could conduct a probable cause search of the vehicle due to the odor of marijuana. Trooper Hamilton began the search, and Corporal Bernard Pettit of the Arkansas State Police and Texarkana Arkansas Police Department Officer Tanner Freeman arrived on scene to assist Trooper Hamilton. During the search of the vehicle, Trooper Hamilton lowered the driver's side rear window. The window did not go all the way down. Trooper Hamilton then looked down inside the door and observed an article of clothing at the bottom of the door, behind the door panel. Trooper Hamilton then rolled down the rear passenger side door window, and the window went all the way down. Trooper Hamilton also looked down into the door and noticed another piece of clothing at the bottom of the door. Closer inspection of the doors showed a black colored package within the clothing which appeared to be a shirt.

16.    Arkansas State Police took custody of the vehicle and detained BREED and CHACHERE pending further inspection of the items inside of the doors. The vehicle, along with BREED and CHACHERE, was transported to a nearby wrecker service, where the door panels could be removed in a safer environment. Inside the driver's side rear door of the SUV, a white shirt and a gray shirt were found wrapped around two "bricks" of substance, covered in black

cellophane. The SUV's rear passenger side door contained a plaid shirt, inside of which was another similar brick in a vacuum-sealed bag. From all of the circumstances, and in light of their training and experience, the officers at the scene believed the bricks contained controlled substances.

17.    Upon the discovery of the bricks described above, BREED and CHACHERE were placed under arrest, read their Miranda Rights, and taken into custody. I was also contacted and responded to the wrecker service location. A further search of the vehicle and persons revealed that BREED had three Apple iPhones—DEVICES 1, 2, and 3—on his person. BREED also had a Cashapp card in his wallet. A search of belongings identified as CHACHERE's also revealed, among other things, five (5) visa bank cards and a fourth Apple iPhone—DEVICE 4. From my training and experience, I know that narcotics smugglers often utilize non-traditional methods of money transactions, such as Cashapp cards, other electronic money remitting applications, pre-paid bank cards, digital currency, and various other electronic means of transferring funds.

18.    HSI SA Sanford took possession of the three (3) bricks of suspected narcotics, the SUBJECT DEVICES, the Cashapp Card, five (5) visa bank cards, and one (1) HP laptop as evidence. BREED and CHACHERE were transported to the HSI Texarkana Office for questioning, as well as the evidence. The suspected narcotics within the three (3) bricks were tested using the D40 Drug Detection Kit manufactured by the MISTRAL GROUP. A sample from each brick was tested separately, and all tested positive for the presence of the properties of cocaine. The two (2) bricks wrapped in black cellophane were weighed, and each weighed approximately two pounds, 10 ounces. The vacuumed seal brick weighed approximately two pounds, eight ounces for a combined total of approximately seven pounds, 12 ounces. The three bricks of substance have since been submitted to the Arkansas State Crime Laboratory for further chemical analysis.

19. BREED and CHACHERE were interviewed separately, and both were advised of their Miranda rights again by HSI SA's. BREED and CHACHERE each acknowledged their understanding of their rights orally and in writing and then requested to speak with an attorney before answering any questions. They were then transported to the Miller County Jail in Texarkana, AR, where they were both booked into the jail on charges of possession of a controlled substance with intent to distribute.

20. In my training and experience, the significant quantity of suspected cocaine recovered from the SUV, along with the manner in which it was packaged and its method of concealment within the vehicle, strongly indicate that the suspected cocaine was being possessed and transported for purposes of distribution to others. Furthermore, I also know from my training and experience that drug traffickers almost invariably utilize wireless telephones, like the SUBJECT DEVICES, to communicate with their sources of supply and to facilitate the sale of illegal drugs to individuals seeking to purchase from them.

21. The SUBJECT DEVICES have remained secure, unaccessed, unaltered, and in the custody of law enforcement at all times since they were seized on March 10, 2022. The SUBJECT DEVICES are currently located at the HSI Texarkana Resident Agent in Charge Office, Texarkana, Miller County, Arkansas, in a secure storage facility.

## CONCLUSION

22. Based on the aforementioned factual information, I respectfully submit that this Affidavit supports probable cause for the attached search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A, to seek the items listed in Attachment B for evidence of distribution of, and possession with intent to distribute, methamphetamine, a Schedule II controlled substance, and unlawful use of a communications facility in furtherance of

such drug trafficking offenses, in violation of Title 21 U.S.C. §§ 841(a)(1) and 843(b), respectively.

Respectfully submitted,

(Appearing by telephone conference call at 415-527-5035)
Special Agent Chet Sanford
Homeland Security Investigations

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035 on this ____ day of July, 2022.

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### (1 of 8)

### DESCRIPTION OF DEVICES TO BE SEARCHED

1. DEVICE 1: A black Apple iPhone, model number unknown, bearing IMEI number 359486322123686, which is being held in the custody of the Homeland Security Investigations, Texarkana Resident Agent in Charge Office, in Texarkana, Miller County, Arkansas, in the Western District of Arkansas, two photos of which follow:



## ATTACHMENT A (CONT'D)

### (2 of 8)

### DESCRIPTION OF SUBJECT DEVICES TO BE SEARCHED



## ATTACHMENT A (CONT'D)

### (3 of 8)

### DESCRIPTION OF SUBJECT DEVICES TO BE SEARCHED

2. DEVICE 2: A black Apple iPhone cellular device model number unknown, serial number unknown, bearing IMEI number 356425106442550, which is being held in the custody of the Homeland Security Investigations, Texarkana Resident Agent in Charge Office, in Texarkana, Miller County, Arkansas, in the Western District of Arkansas, two photos of which follow:



## ATTACHMENT A (CONT'D)

### (4 of 8)

### DESCRIPTION OF THE SUBJECT DEVICES TO BE SEARCHED



## ATTACHMENT A (CONT'D)

### (5 of 8)

### DESCRIPTION OF SUBJECT DEVICES TO BE SEARCHED

3. DEVICE 3: A red Apple iPhone cellular device model number unknown, serial number unknown, bearing IMEI number 357332368645285, which is being held in the custody of the Homeland Security Investigations, Texarkana Resident Agent in Charge Office, in Texarkana, Miller County, Arkansas, in the Western District of Arkansas, two photos of which follow:



## ATTACHMENT A (CONT'D)

### (6 of 8)

### DESCRIPTION OF THE SUBJECT DEVICES TO BE SEARCHED



## ATTACHMENT A (CONT'D)

### (7 of 8)

### DESCRIPTION OF SUBJECT DEVICES TO BE SEARCHED

4. DEVICE 4: A red Apple iPhone cellular device model number unknown, serial number unknown, bearing IMEI number 356599144908606, which is being held in the custody of the Homeland Security Investigations, Texarkana Resident Agent in Charge Office, in Texarkana, Miller County, Arkansas, in the Western District of Arkansas, two photos of which follow:



## ATTACHMENT A (CONT'D)

### (8 of 8)

### DESCRIPTION OF SUBJECT DEVICES TO BE SEARCHED



This warrant authorizes the forensic examination of the each of the SUBJECT DEVICES identified herein for the purpose of identifying and seizing the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records and information on the SUBJECT DEVICES described in Attachment

A that constitute evidence, instrumentalities, and/or proceeds of violations of **21 USC §§**

**841(a)(1) and 843(b)** by **ELMER BREED, KIMBERLY CHACHERE,** and/or others,

including but not limited to:

   a.   lists of customers and related identifying information;

   b.   types, amounts, and prices of controlled substances trafficked, as well as dates, places, and amounts of specific transactions;

   c.   any information related to sources of or customers for controlled substances (including names, addresses, phone numbers, or any other identifying information);

   d.   any information recording the location and/or travel of the SUBJECT DEVICES and/or the users of the SUBJECT DEVICES from **February 1, 2022,** to the present;

   e.   all bank records, checks, credit card bills, account information, and other financial records that may reveal the purchase of narcotics or firearms.

   f.   Photos and videos which tend to show the owner/user of the wireless phone, or which depict controlled substances, money or other assets, or which identify criminal associates.

2.      Evidence of user attribution showing who used or owned the Devices at the time

the things described in this warrant were created, edited, or deleted, such as logs,

phonebooks, saved usernames and passwords, documents, and browsing history;

3.      As used above, the terms "records" and "information" include all of the foregoing

items of evidence in whatever form and by whatever means they may have been created

or stored, including any form of computer or electronic storage (such as flash memory,

SIM card, or other media that can store data) and any photographic form.